**Jane E. RISSE, Plaintiff-Appellant,**

**v.**

**X. O. WOODARD and Clarence E. Hughey, Defendants-Appellees.**

**No. 73-1299.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1974.

Decided Feb. 21, 1974.

Michael H. Lyons, Chicago, Ill., for plaintiff-appellant.

Robert J. Baron, James E. Babcock, Joliet, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

PER CURIAM.

Plaintiff Jane E. Risse brought this diversity action against defendants X. O. Woodard and Clarence E. Hughey seeking damages for injuries sustained as a result of the alleged negligence of the defendants. The case was tried before a jury which became deadlocked in their deliberations. As a result of the jury's inability to return a verdict the district court declared a mistrial and thereafter directed verdicts in favor of both defendants. Upon appeal, we reverse.[1]

The skeletal facts precipitating the controversy before us are as follows. On March 26, 1970 at approximately 10:00 p. m. plaintiff and her family were traveling west on Route 6 in Will County, Illinois. Her husband, the driver, desired to make a lefthand turn (south) on Frontage Road which was perpendicular to Route 6. Plaintiff's vehicle was situated in the westbound lane of Route 6 and waiting to make the desired lefthand turn onto Frontage Road. At the same time defendant Hughey was approaching plaintiff's vehicle and traveling in the eastbound lane on Route 6. Additionally, defendant Woodard was proceeding north on Frontage Road and desired to turn right onto Route 6. Defendant Hughey's vehicle collided first with defendant Woodard and thereafter collided with plaintiff's vehicle.

Plaintiff urges on appeal that the district court erred in not ordering a new trial subsequent to declaring a mistrial; directing a verdict in favor of both defendants; and determining that the plaintiff did not establish the amount of damages necessary to sustain jurisdiction in a diversity cause of action.

I

Setting aside for the moment the issue of whether the district court erred in failing to grant a new trial, we first address ourselves to the propriety of the granting of a directed verdict. An analysis of the issue must be viewed against the appropriate standard for directing a verdict. Illinois substantive law controls and the pertinent decisional law is found in Pedrick v. Peoria & E. R.R., 37 Ill.2d 494, 229 N.E.2d 504 (1967). There the Illinois Supreme Court enunciated the following standard:

> . . . verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

Upon application of this standard to the evidence, we conclude that the district court erred in directing verdicts in favor of the defendants. Accordingly, the

---

1. On appeal only defendant Woodard has filed an appearance and submitted a brief.

granting of a new trial would have been the appropriate vehicle for disposing of this matter after the district court had declared a mistrial.[2] It is unnecessary for us to go into intricate detail to explain our disposition other than to articulate the following. The vehicle in which plaintiff was a passenger was stopped, with directional signal operating, in the westbound lane of Route 6 and waiting to make a lefthand turn onto Frontage Road. Defendant Hughey was traveling in the eastbound lane of Route 6. As Hughey approached the intersection of Frontage Road and Route 6 he noticed defendant Woodard who was on Frontage Road and desiring to make a righthand turn onto Route 6. Before entering the intersection Hughey applied his brakes, struck the Woodard vehicle, and then careened into the plaintiff's vehicle which was situated in the westbound lane of Route 6. The exact circumstances giving rise to the collision with plaintiff's vehicle are uncertain. Who was responsible for the accident is clouded by some contrarity in the testimony of the two defendants.[3] What is certain is that there is a conspicuous absence of evidence that the plaintiff's vehicle was in any way the cause of the accident or improperly situated. There is no proof that plaintiff's husband was in any way contributorily negligent. What we have are two defendants, each pointing to the other as the one responsible for the collision. In these circumstances the posture of this case made it clearly inappropriate for disposal by directed verdict. In short, we cannot conclude, after considering the record against the *Pedrick* rule, that the evidence favoring defendants is so overwhelmingly against plaintiff that a verdict for her could not stand.

## II

Plaintiff's final contention is that the district court erred in determining that the jurisdictional amount of $10,000 had not been met in this case. We are uncertain whether the district court actually ruled on the jurisdictional amount or merely commented on the same by expressing skepticism over whether the amount had been proved. In either case, however, we find that the requisite amount to sustain jurisdiction was proper in this case. Plaintiff in her complaint alleged damages in excess of the amount necessary to sustain jurisdiction in a diversity action. Moreover, plaintiff's counsel in his opening statement requested that the jury return a verdict in favor of the plaintiff in excess of the jurisdictional amount.

It is not incumbent upon a plaintiff to show with absolute certainty that she will recover the amount alleged in the complaint. The only requirement is that the amount sought be in good

---

2. Our review of the record compels us to question the propriety of the way the district court handled this case subsequent to the jury's inability to return a verdict.

THE COURT: Mr. Foreman, have you arrived at a verdict?

JURY FOREMAN: No, sir, we haven't.

THE COURT: Do you think there is any remote possibility of arriving at a verdict?

JURY FOREMAN: No, Sir.

THE COURT: Without indicating which way, if there is a split, *what is the count*, without saying which way it goes? (Emphasis supplied.)

JURY FOREMAN: It would be an even split, your Honor.

Our concern centers on the following statement by the trial judge to plaintiff's counsel after the mistrial had been granted and the directed verdict entered: "We have a practice over here, give the jury one bite at the apple and when they decide 50–50, that is the end of the lawsuit."

If there is a "practice" of granting directed verdicts for defendants in damage suits when a jury is deadlocked, as characterized by the district court, we think it is entirely improper and should be abandoned in all future cases.

3. Hughey testified that Woodard's vehicle did not stop from the time when he first saw it until the time of the collision which he stated occurred in the eastbound lane of Route 6. Woodard testified, however, that his vehicle at no time had entered upon Route 6 and that he was stopped on Frontage Road waiting to make a righthand turn.

faith. Miami Beach Yacht Corp. v. Ferro Corp., 461 F.2d 770 (5th Cir. 1972). The basic criterion for determining whether the amount sought was not made in good faith is if it can be concluded beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount. We cannot conclude after a review of the record that the amount sought by plaintiff was colorable in the sense of having been made in bad faith. Moreover, there is no claim of bad faith on the part of plaintiff with regard to the amount sought by either of the defense counsel or by the district court at any time prior to the court's remarks after the jury had indicated it was deadlocked.

The judgment of the district court directing a verdict for defendants is reversed and the case remanded for a new trial.