D. R. W. CORPORATION, Appellant, v. CORDES, Respondent.*

*No. 244.   Argued October 2, 1974.—Decided October 29, 1974.*
(Also reported in 222 N. W. 2d 671.)

* Motion for rehearing denied, with costs, on December 20, 1974.

For the appellant there was a brief by *Murn, Ferr, Gumina & Blask* of West Allis, and oral argument by *Paul J. Ferr.*

For the respondent there was a brief by *William A. Denny* of *Frisch, Dudek, Slattery & Denny,* Milwaukee, and oral argument by *William A. Denny.*

On rehearing there was a brief for the appellant by *Murn, Ferr, Gumina & Blask*; and for the respondent a brief by *Denny & Yanisch,* attorneys, and *William A. Denny* of counsel, all of Milwaukee.

ROBERT W. HANSEN, J. If this case were a book it would begin with the down payment of $5 by respondent on a three-year lease of an apartment. In the first chapter would be the notice from the not-to-be-tenant that he had been transferred out of the city and would not move into the apartment. Then would come the four months' vacancy and the landlord-corporation's suit for rental loss and the expense of rerenting under the lease agreement. That would be an ordinary enough first chapter describing a usual enough sequence of events but, from there on, the plot does thicken.

*Defense of fraud.* As an affirmative defense the respondent alleged and, at the trial, testified that the agent of the company assured him that if the lessees had to or would like to get out of the agreement all they would have to do is give two months' notice. The husband-lessee-respondent testified: "I knew that it was a three year lease but I also knew or got assured by Mr. Wolinsky that I would have two months or 60 days escape clause without any further obligation." The jury found such oral assurance by the agent to constitute fraud in inducement. Whether it is more properly ground for rescission or reformation of the written agreement is not at issue and not before us. Denial of damages to the appellant corporation under the lease agreement is not among the issues argued on this appeal.

*Counterclaim for fraud.* On the day before the trial commenced, the trial court permitted the respondent to amend its answer to add a second counterclaim, the one added being for damages based on fraud in inducement. Appellant claims abuse of discretion in adding the last-minute counterclaim. Pleadings may be amended "upon such terms as may be just." [1] This statute is to be liberally construed, providing that the amendment does not " '. . . unfairly deprive the opposing party of timely opportunity to meet the issue created by the amendment.' " [2] If the amendment here had confronted respondent with a new issue of which it was unaware or upon which it was unprepared, the trial court could have denied the motion or, at the least, granted the motion and a continuance for such time as reasonably necessary to investigate and defend the issue. [3] Here the added counterclaim added only a claim for damages on an issue of fraud in inducement raised in the original answer as an affirmative defense. Since it arose out of the same transaction and derived from the issue raised in the answer, we do not find here the manifest abuse of discretion required for reversal. [4] The trial court walked near the side of the cliff, but did not fall over the edge.

*Compensatory damages for fraud.* The jury here found that $1,200 would reasonably compensate respondent for the damages sustained by reason of being told by appellant's agent that sixty days' notice would get him out

---

[1] Sec. 269.44, Stats.

[2] *Heritage Mut. Ins. Co. v. Thoma* (1970), 45 Wis. 2d 580, 584, 173 N. W. 2d 717, quoting *Wipfli v. Martin* (1967), 34 Wis. 2d 169, 174, 148 N. W. 2d 674, this court in *Wipfli* also stating: "Lack of timeliness of the motion in this case depends upon the prejudice or unfairness to the defendant in being required to go to trial the next day. . . ."

[3] *Wipfli v. Martin, supra,* at pages 174, 175.

[4] *Celmer v. Quarberg* (1973), 56 Wis. 2d 581, 592, 203 N. W. 2d 45, citing *Herchelroth v. Mahar* (1967), 36 Wis. 2d 140, 153 N. W. 2d 6; *Kuester v. Rowlands* (1947), 250 Wis. 277, 26 N. W. 2d 639.

from under the lease. On motions after verdict the trial court reduced this amount to "None," and subsequently set it at $5, the down payment made by respondent on the lease. The appellant would have us reduce this amount back to "None." The respondent would have us reinstate the jury award of $1,200. Actual damage is an essential element in a cause of action based on fraud.[5] The evidence in this case supports the eventual holding of the trial court that the respondent suffered actual damages of $5. When he signed the lease agreement, that is what he paid down. When his affirmative defense setting aside the lease as procured by fraud was upheld, the $5 is what he lost. The tail of entitlement to damages for alleged mental suffering does not fit this kite. In an action in tort for damages for emotional distress allegedly caused by the misconduct of the defendant contractor in the performance of a contract to re-side the plaintiff's house, this court laid down four factors required for the plaintiff to recover: (1) That the defendant behaved as he did for the purpose of causing emotional distress for the plaintiff; (2) that the defendant's conduct must be extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the injury; and (4) that the plaintiff must demonstrate that he suffered an extreme disabling emotional response to the defendant's conduct.[6] All four tests must be passed, and here they were not. We uphold the trial court's second and final determination that actual or compensatory damages for fraud were $5. It's not a lot, but here it's all that respondent lost.

*Punitive damages for fraud.* On the counterclaim for fraud, the jury awarded respondent punitive or punishment damages in the amount of $5,000. On motions after

[5] *Widemshek v. Fale* (1962), 17 Wis. 2d 337, 340, 117 N. W. 2d 275. *See also: Williams v. Rank & Son Buick, Inc.* (1969), 44 Wis. 2d 239, 242, 170 N. W. 2d 807.

[6] *Alsteen v. Gehl* (1963), 21 Wis. 2d 349, 359–361, 124 N. W. 2d 312, quoted and followed in *Ver Hagen v. Gibbons* (1970), 47 Wis. 2d 220, 226, 177 N. W. 2d 83.

verdict the trial judge reduced this amount to "None" for the reason that the compensatory damage award for fraud had been similarly reduced to zero, and punitive damages could not be awarded where no compensatory damages were allowed.[7] However, when the trial court reset compensatory damages at $5, it reinstated the punitive damage award for fraud of $5,000. In initially setting aside the jury award of punitive damages the trial court was right, but for a reason not stated. The situation here involved is not one in which punitive damages can be awarded. The controlling case involves an analogous situation where the plaintiff, in inducing the defendant to sign a contract for the lease of a freezer unit, falsely represented that the freezer was an automatic defrosting unit when it was actually a manually defrosting unit.[8] In holding that it was not error to refuse to submit punitive damage questions to the jury, this court held that punitive damages in this state could be allowed ". . . only where the wrong was inflicted 'under circumstances of aggravation, insult or cruelty, *with vindictiveness or malice.*'"[9] (Emphasis supplied.) There this court held, as to the misrepresentation of the type of refrigerator being sold, that ". . . the facts of this case in the inducement to enter the contract do not justify a finding of malice, vindictiveness or wanton disregard necessary to justify the imposition of punitive dam-

---

[7] *Hanson v. Valdivia* (1971), 51 Wis. 2d 466, 474, 187 N. W. 2d 151, this court holding: ". . . the rule is well established in this state that a claim for punitive damages alone is not sufficient to support a cause of action. There must be a showing of some actual injury which would justify an award of actual or compensatory damages before punitive damages may be awarded. . . ."

[8] *Mid-Continent Refrigerator Co. v. Straka* (1970), 47 Wis. 2d 739, 178 N. W. 2d 28.

[9] *Id.* at page 747, citing *McWilliams v. Bragg* (1854), 3 Wis. 377 (*424) 383 (*431).

ages." [10] No such specific finding was here made and, upon this record, none would be warranted. Holding punitive damages not awardable in the situation here presented makes it unnecessary to consider the corollary requirement, as to the corporate appellant, that the corporation authorized or ratified the alleged tortious act of its employee.[11] The order of the trial court reinstating the punitive damage award is reversed, and the earlier order denying such punitive damages is reinstated and upheld.

*Jurisdiction to review.* Now, if not earlier, there has to be a short chapter in the book on whether the trial court had jurisdiction to enter its second order changing its no-compensatory-damages order to a $5 order. It was within two months of the jury verdict that the trial court heard motions after verdict and entered the no-damages order. But, with no order extending time for entertaining motions, it was well beyond two months when the court, after getting a letter from respondent's attorney, sua sponte ordered another hearing and made the second or revised order for $5 compensatory damages. The statute that is applicable sets a two-month limit for motions "to set aside a verdict and for a new trial." [12] Appellant claims the statute was not complied with and relies upon the *Urban Case* [13] in which a motion to change the verdict answers or, in the alternative, for a new trial, was made within sixty days and the court revised its order after the sixty-day period had expired. We held

[10] *Id.* at page 748.

[11] *Id.* at pages 748, 749, stating: ". . . In *Garcia v. Samson's, Inc.* (1960), 10 Wis. 2d 515, 103 N. W. 2d 565, this court reaffirmed a well-established line of cases refusing punitive damages in tort against a corporate defendant without proof that the defendant authorized or ratified the alleged tortious act of its employee. . . ."

[12] Sec. 270.49, Stats.

[13] *Urban v. Anderson* (1940), 234 Wis. 280, 291 N. W. 520.

there that the trial court having fixed the rights of the parties by order made within the statutory period lacked jurisdiction to modify such rights after sixty days had passed.[14] Respondent relies upon a year-earlier holding of this court, in the *Webster Case*,[15] dismissing a challenge to a trial court order entered more than sixty days after the jury verdict. The two cases sleep uncomfortably in the same bed because the later case does not mention the existence of the other. However, *Urban* does not alter the *Webster* construction of the statute as applying ". . . only to motions for orders granting a new trial in conjunction with setting aside a verdict. . . ."[16] The statute being construed as not applying to motions granted otherwise than for a new trial does not apply, much less invalidate, the trial court's second order here, concededly entered more than sixty days after the jury's verdict.

*Counterclaim for libel.* The counterclaim for damages for libel involves a letter sent by the agent of appellant to a subsequent tenant of the same apartment once leased by respondent, and the circumstances leading up to the sending of the letter. First came the visit of respondent to the apartment, for reasons not clear in the record, to visit the subsequent tenants and his informing them of his being sued by appellant for not making payments under the three-year lease. The second leading-up-to circumstance is the sending of a letter by the subsequent tenant to appellant telling of the visit with respondent and of being told that respondent gave a sixty-day notice, which he had not done, and of his "now being sued by you because of it." Appellant by its agent answered, accepting the subsequent tenant's letter as notice of intention to vacate, stating that the lawsuit involving respondent did not involve the subsequent

[14] *Id.* at page 284.

[15] *Webster v. Krembs* (1939), 230 Wis. 252, 282 N. W. 564.

[16] *Id.* at page 255.

tenant's situation since the "circumstances are completely different," as indeed they were. Then the agent, in the letter, said of respondent, "this gentleman skipped the country owing money to us." Appellant claims that, under these circumstances, the statement in the letter about "skipping the country" is not capable of being given a defamatory meaning. In determining whether language is defamatory, words used must be reasonably interpreted ". . . in the context in which they were used and under the circumstances they were uttered. . . ." [17] Here it is the statement that respondent "skipped the country" that is the sole basis on which a finding of libel could be based. We agree with the appellant that the phrase, under all of the circumstances here involved, is capable of being given a nondefamatory meaning. However, we agree with the trial court that, as here used, it is also capable of being given a defamatory meaning so a jury question was presented.[18] We uphold the jury determination that the letter contained a defamatory statement, not actuated by malice, that was substantially not true.

*Compensatory damages for libel.* The jury found the statement in appellant's letter to be defamatory but awarded no damages. On motions after verdict, the trial court charged the damage award from "None" to $750, the amount requested by respondent's counsel. The proper test to be applied in determining whether a jury's answer should be changed, we have recently held, is whether there is any credible evidence which supported

[17] *Frinzi v. Hanson* (1966), 30 Wis. 2d 271, 276, 140 N. W. 2d 259, citing *Meier v. Meurer* (1959), 8 Wis. 2d 24, 98 N. W. 2d 411; *Leuch v. Berger* (1915), 161 Wis. 564, 155 N. W. 148.

[18] *Id.* at pages 275, 276, stating: ". . . if the language is of such a character that it is capable of a nondefamatory meaning as well as a defamatory meaning, then a jury question is presented . . . ." Citing *Martin v. Outboard Marine Corp.* (1962), 15 Wis. 2d 452, 113 N.W. 2d 135.

the answer.[19] Where there is credible evidence which when reasonably viewed fairly admits an inference supporting the jury's findings, it follows that " '. . . neither the trial court nor this court has authority to change the jury's findings.' " [20] The crucial question is whether the evidentiary facts which, in the case before us are practically without dispute " '. . . reasonably support the jury's conclusion of ultimate fact drawn therefrom.' " [21]

In applying the "any credible evidence" test to the jury finding of no damages, as in testing a finding of defamation, ". . . the surrounding circumstances under which the alleged slander or libel was published must be taken into consideration. . . ." [22] In the case before us such surrounding circumstances include not only the letter sent by appellant, but the earlier letter sent to it by the subsequent tenant of the apartment involved in this case. That letter indicated a desire to vacate the apartment before the lease expired. It told of the tenant being visited by respondent who told of his having been promised by appellant a right to terminate a three-year lease on sixty days' notice but that when he sought to do so (which he had not done), he was being sued by appellant because of so doing. Appellant's agent answered, accepting the tenant's letter as a notice of intention to vacate, telling the tenant that the circumstances of re-

[19] *Lipinski v. Pakulski* (1974), 62 Wis. 2d 628, 635, 215 N. W. 2d 468, citing *Leatherman v. Garza* (1968), 39 Wis. 2d 378, 159 N. W. 2d 18.

[20] *Leatherman v. Garza, supra,* at page 386, quoting *Paul v. Hodd* (1955), 271 Wis. 278, 280, 73 N. W. 2d 412, citing *Auster v. Zaspel* (1955), 270 Wis. 368, 370, 71 N. W. 2d 417.

[21] *Id.* at page 386, quoting *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941), 236 Wis. 419, 424, 295 N. W. 755.

[22] *Martin v. Outboard Marine Corp., supra,* footnote 18, at page 463. *See also: Frinzi v. Hanson, supra,* footnote 17, at pages 275, 276.

spondent's situation were completely different and stating that the defendant had "skipped the country owing money to us." The tenant sent this letter to the respondent who was then living in Germany. The only persons who saw the letter were the subsequent tenant and his wife, the respondent and his wife, and any persons in Germany to whom respondent may have shown it. The deposition of the wife of the subsequent tenant, read into the record, stated that after reading the letter it "tended to lower my opinion of Mr. Cordes" as a person and that "I just feel the information . . . should not have been given us." This is the sole testimony as to the "harmed reputation" of the respondent that would "lower him in the estimation of the community or . . . deter third persons from associating or dealing with him." [23] We do not need to deal with the question of whether so heavy a claimed consequence of lowered community standing can hang on so small a hook. The jury was not required to accept the statement of the subsequent tenant's wife that the statement in the letter lowered her opinion of the person mentioned, to whom she promptly forwarded the letter. With her testimony rejected by the jury, there is in this record no evidence upon which an award of damages deriving from the statement in the letter could be based.

There remain two issues to consider. First, the jury was instructed that if it found the statement in the letter to be defamatory it was required to assess at least nominal damages. It is expected that juries, finding libel but no actual damages, will assess nominal damages,

[23] *DiMiceli v. Klieger* (1973), 58 Wis. 2d 359, 363, 206 N. W. 2d 184, stating: ". . . a communication is defamatory '. . . if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Citing Restatement, 3 *Torts,* p. 140, sec. 559.

traditionally six cents' worth. That could and perhaps should have been done here. But we would not upset the jury determination for the six cents' worth of difference. In fact, with the jury entitled to find no actual damages at all, we hold that the jury had the right to answer the special verdict question as to compensatory damages for libel exactly as they did, "None." The second issue relates to the failure of the trial court to grant appellant the option of a new trial [24] when it set aside the jury verdict of no compensatory damages for libel and found $750 to be a "fair and rational request" by respondent's counsel. Clearly this was error for the situation presented was within the *Powers-Parchia* mandate. However, our reinstating the jury verdict as to no compensatory damages on the counterclaim for libel removes the error and the issue from this appeal.

So the final chapter in the story of this case draws to a close with: (1) The order of the trial court setting $5 as the actual or compensatory damages sustained by respondent on his counterclaim for fraud is upheld and hereby affirmed; (2) the order of the trial court reinstating the $5,000 punitive damage award on the counterclaim for fraud is reversed and set aside, with the earlier order of the trial court awarding no punitive damages on the counterclaim for fraud reinstated and hereby affirmed; and (3) the order of the trial court changing the jury verdict as to compensatory damages on the counterclaim for libel is reversed, and the jury verdict of no

[24] *See: Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 91, 92, 102 N. W. 2d 393, this court holding that: ". . . where an excessive verdict is not due to perversity or prejudice, and is not the result of error occurring during the course of trial, the plaintiff should be granted the option of remitting the excess over and above such sum as the court shall determine is the reasonable amount of plaintiff's damages, or of having a new trial on the issue of damages. . . ." Made applicable to jury awards of inadequate damages in: *Parchia v. Parchia* (1964), 24 Wis. 2d 659, 130 N. W. 2d 205.

compensatory damages on the counterclaim for libel is reinstated and hereby affirmed. So the story ends with the respondent receiving the $5 down payment which is what he lost when he was induced to sign the three-year lease for the apartment.

*By the Court.*—Judgment affirmed in part, reversed in part; and cause remanded with directions to enter judgment for $5 compensatory damages on the counterclaim for fraud. No costs are awarded to either party on this appeal.