C. A. JEFFERS, Jr., and May A. Jeffers, his wife,
Plaintiffs-Respondents,

v.

Allen A. NYSSE and Sunshine Acres Corporation, a domestic corporation, Defendants-Appellants-Petitioners.

Supreme Court

*No. 78–115. Argued September 2, 1980.—
Decided October 28, 1980.*

(Also reported in 297 N.W.2d 495.)

For the appellants-petitioners there were briefs by *Harvey G. Samson* and *Bollenbeck, Block, Froehlich & Seymour, S. C.,* of Appleton, and oral argument by *Harvey G. Samson.*

For the respondents there was a brief by *Roger W. Clark* and *Herrling, Clark, Hartzheim & Siddall, Ltd.,* and oral argument by *Joseph M. Troy,* all of Appleton.

DAY, J. This is a review of an unpublished decision of the court of appeals modifying, and affirming as modified, the judgment of the circuit court for Outagamie county. The primary issue presented on review is the propriety of an award of punitive damages without a showing of actual malice on a finding of fraudulent misrepresentation in the inducement to enter a contract. Also challenged is the sufficiency of the evidence to support the jury's finding of fraudulent misrepresentation.

We conclude that punitive damages were properly awarded based on the facts of this case. We also conclude the jury was warranted in finding fraudulent misrepresentation.

Defendant-petitioner Allen A. Nysse is president and sole shareholder of co-defendant Sunshine Acres Corporation. In 1976, Sunshine Acres built an electrically heated house in New London, Wisconsin, and offered it for sale.

In late August, 1976, C. A. Jeffers and his wife May decided to purchase the house. In the course of their negotiations Mrs. Jeffers asked Mr. Nysse about the cost of heating the house. In response to her inquiry, Nysse

showed her an annual heating cost estimate of $643.36 prepared by the Wisconsin-Michigan Power Company.

On August 29, 1976, the Jeffers made an offer to purchase the house which was accepted the same day by Nysse, as president of Sunshine Acres.

At the time of the offer to purchase the Jeffers determined that the house would be too small to accommodate their family and decided to enlarge it. In September, 1976, the Jeffers negotiated with Sunshine Acres to make the existing garage and basement into living space and to build a new garage. The Jeffers moved into the house sometime prior to the closing date of October 1, 1976.

In November, 1976, the Jeffers received an electric bill that they considered excessive. They contacted Wisconsin-Michigan Power Company, and Mr. Brendon Kohlbech of the utility visited the home shortly thereafter. He brought with him the original heating cost estimate prepared by him which was based on specifications supplied by Nysse. Although the alterations to the house had increased its heating cost, it was determined that the insulation installed by Nysse in the original structure did not meet the specification requirements of the Power Company in the following ways: (1) the walls were generally insulated to a resistance factor of R–11, although the heating cost estimate was based on R–13; (2) the corners of the building, accounting for about ten percent of the wall space, were not insulated; (3) none of the basement was insulated; and (4) a two foot by four foot area of the attic was uninsulated.

Mr. Jeffers then contracted elsewhere for additional insulation, and the work was performed in late 1976 and early 1977.

The Jeffers then brought action to recover excess heating expenses and the cost of completing the insula-

tion, alleging breach of contract and fraudulent misrepresentation. The cause was tried before a jury.

The jury in answer to Question 1 of the special verdict found that the defendant, Allen A. Nysse, made "an untrue representation of fact as to the heating cost and insulation of the Jeffers' home as it existed on the date of purchase, (August 29, 1976), knowing it was untrue, and with intent to deceive and induce the plaintiffs to act upon it." In answer to Question 2 of the special verdict, the jury found that the plaintiffs believed the misrepresentation and justifiably relied on it. The jury found compensatory damages of $3,050 and punitive damages in the same amount. Judgment on the verdict was entered against Allen A. Nysse and Sunshine Acres Corporation on June 29, 1978.

The defendants appealed alleging that punitive damages were improperly awarded and challenging the sufficiency of the evidence to establish fraud and to justify compensatory damages of $3,050.

The court of appeals modified the judgment, reducing the compensatory damages to $1,205.18. That modification is not at issue on review. The court of appeals affirmed the finding of fraud and the award of punitive damages.

Allen A. Nysse and Sunshine Acres Corporation seek review of the court of appeals decision.

The principal question raised in this review is whether punitive damages were properly awarded following a finding that the defendants fraudulently induced the buyers to enter into the contract without a showing of actual malice. We hold that punitive damages were properly awarded.

On the question of punitive damages, the trial court instructed the jury as follows:

"If you find from the evidence that the defendant, Allen A. Nysse, in this case made an untrue representa-

tion of fact as to the heating cost and insulation of the Jeffers home as it existed on the date of purchase, in this case August 29, 1976, and knowing that it was untrue and made that representation with intent to deceive and induce the plaintiffs to act upon it, and further find that the defendant acted either maliciously or in willful or reckless disregard of the plaintiffs' rights, you may, if you see fit, but you are not obliged to do so, award in addition to compensatory damages such sum as punitive damages as you may think proper under the circumstances of the case by way of example or punishment in order to deter the defendant and others from offending in like manner in the future. You may also consider the seriousness of the offense committed in reaching your answer.

"Now, acts are malicious when they are actuated by ill will, a desire for revenge, or inflicted under circumstances where insult is intended. Punitive damages are never a matter of right, but when allowable may be awarded or withheld in the discretion of the jury. Punitive damages may not be awarded unless the acts of the defendant in question were done maliciously or in willful or reckless disregard of the plaintiffs' rights, and even if malicious, willful or reckless, you may withhold or allow punitive damages as you see fit. You may not, however, award punitive damages unless you have awarded compensatory damages."

These instructions correctly state the law of punitive damages in Wisconsin on the facts of this case. However, generally the instruction should include "wanton" so the phrase reads, "wanton, wilful or reckless disregard. . ." as in *Kink v. Combs*, 28 Wis.2d 65, 135 N.W. 2d 789 (1965), discussed below.

In *Malco v. Midwest Aluminum Sales*, 14 Wis.2d 57, 66, 109 N.W.2d 516 (1961), this court described the purposes sought to be served by the award of punitive damages.

"Punitive damage is given on the basis of punishment to the injured party not because he has been injured, which injury has been compensated with compensatory

damages, but to punish the wrongdoer for his malice and to deter others from like conduct. Punitive damage ought to serve its purpose. Consideration should be given to the wrongdoer's ability to pay and the grievousness of his acts, the degree of malicious intention, and potential damage which might have been done by such acts as well as the actual damage."

Punitive damages have been a part of Wisconsin law since 1854. In *McWilliams v. Bragg*, 3 Wis. 377 (*424), 382–383 (*431–432) (1854), this court said:

". . .the great weight of authority in the American courts is in favor of permitting juries in actions of this character, not only to take into consideration the actual injury sustained by the plaintiff, but, where that injury is inflicted under circumstances of aggravation, insult or cruelty, with vindictiveness and malice; but in view of all such circumstances, to impose what is sometimes termed *exemplary,* and sometimes *punitory* damages, in addition to the actual damages."

In *Kink v. Combs, supra,* this court held that malice or vindictiveness is not a necessary prerequisite for an award of punitive damages.

"For the award of punitive damages, it is sufficient that there be a showing of wanton, wilful, or reckless disregard of the plaintiff's rights." 28 Wis.2d at 79.

In the recent case of *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 221, 291 N.W.2d 516 (1980), this court summarized the Wisconsin rule on the award of punitive damages as follows:

"To sustain an award for punitive damages, the law does not require a specific finding of an intentional and ruthless desire to injure, vex or annoy. The injured party need show only a wanton, willful or reckless disregard of the rights of others on the part of the wrongdoer. 'Reckless indifference to the rights of others and conscious action in deliberate disregard of them . . . may provide the necessary state of mind to justify puni-

tive damages.' 4 Restatement (Second) of *Torts* sec. 908, comment *b,* p. 465 (1977). *See also, Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 697, 271 N.W.2d 368 (1978); *Mid-Continental* [sic] *Refrigerator Co. v. Straka,* 47 Wis.2d 739, 744-748, 178 N.W.2d 28 (1970); *Jones v. Fisher,* 42 Wis.2d 209, 218, 219, 166 N.W.2d 175 (1969); McCormick, *Damages,* sec. 79, p. 280 (1935); Prosser, *Law Of Torts* 10 (4th ed. 1971)."

This court has previously considered the applicability of punitive damages to claims of fraudulent inducement to enter a contract.

*Barber v. Kilbourn,* 16 Wis. 511, (*485) (1863), involved a sale of corporate stock in which the value of the corporation's assets had been fraudulently misrepresented. In *Barber,* only nominal damages had been suffered by the defrauded party and the statute of limitations partially barred the action. The court did, however, discuss the punitive damages issue and expressed serious misgivings about allowing punitive damages in actions for fraudulent inducement to enter a contract. The court stated that:

"If the plaintiff was guilty of a suppression of the truth upon a matter material to the contract, and about which he was bound to make a full disclosure, and did this with intent to deceive and defraud, the defendant has a good defense to the note to the extent of the damage which he has sustained by the fraud. Whether the jury would be authorized in a case of this character to give vindictive damages over and above the actual damages sustained by the defendant, is a proposition about which I have considerable doubt. It is undoubtedly a well established principle of the common law, and one recognized by this court, that in a certain class of actions a jury may inflict what are called punitive or vindictive damages, by way of punishment of the defendant for his wanton and lawless conduct. This rule of damages is frequently acted on in actions of trespass to the person, slander, libel, crim. con., etc. But I doubt much its application to a case like this, even where it appears

that the defendant has sustained something more than nominal damages by the false representation." 16 Wis. 511, 515 (*485, *489) (1863).

In *Mid-Continent Refrigerator Co. v. Straka,* 47 Wis. 2d 739, 178 N.W.2d 28 (1970), the plaintiff, Mid-Continent Refrigerator Co., sued to recover payments due on a leased display freezer. The defendant, Straka, counterclaimed in fraud, alleging that the refrigerator company's sales representative had fraudulently represented the leased freezer to be a self-defrosting model. The unit was a manually defrosting model. The jury found fraudulent misrepresentation, but the trial court refused to submit a special verdict question on punitive damages. On appeal, this court affirmed, saying:

"We do not hold that fraud or deceit in the inducement of a contract can never be the basis for an award of punitive damages. We do hold that the facts of this case in the inducement to enter the contract do not justify a finding of malice, vindictiveness or wanton disregard necessary to justify the imposition of punitive damages." 47 Wis.2d at 748.

The court also cited the earlier case of *Barber v. Kilbourn, supra.*

In *D. R. W. Corporation v. Cordes,* 65 Wis.2d 303, 222 N.W.2d 671 (1974), this court reviewed an award of punitive damages in a claim of fraudulent inducement to enter a lease. The jury found fraud in the inducement awarding $1,200 in compensatory damages and $5,000 in punitive damages. On motions after verdict the trial court reduced the compensatory damages to "none" and also struck the award of punitive damages for fraud since it found no actual damages. Later the trial court changed its order for compensatory damages to $5 which was the amount of the unrecovered downpayment made on the lease, and accordingly reinstated the $5,000 award of punitive damages.

On appeal, this court reversed the reinstatement of punitive damages citing *Mid-Continent* and saying:

"No such specific finding [of malice, vindictiveness or wanton disregard] was here made and, upon this record, none would be warranted." 65 Wis.2d at 311.

When *Barber* was decided, a showing of malice or vindictiveness was prerequisite to an award of punitive damages under *McWilliams v. Bragg*.[1] Following this court's 1965 decision in *Kink v. Combs*,[2] however, a showing of wanton, wilful or reckless disregard of the plaintiff's rights has been sufficient basis for an award of punitive damages, and that standard has been repeated in this court's most recent punitive damage cases. *(Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 267, 294 N.W.2d 437 (1980), products liability; *Fahrenberg v. Tengel,* 96 Wis.2d 211, 221, 291 N.W.2d 516 (1980), conversion of property).

We find no logical basis for applying a different punitive damages standard in a case of fraudulent inducement to enter contract than that applied in other tort actions. We interpret *Mid-Continent* as holding there was no error by the trial judge in refusing to submit a question on punitive damages to the jury, based on the facts of that case.[3] *Kink v. Combs, supra,* cited in *Mid-*

---

[1] *McWilliams v. Bragg,* 3 Wis. 377 (*424), 383 (*431) (1854).

[2] *Kink v. Combs,* 28 Wis.2d 65, 79, 135 N.W.2d 789 (1965).

[3] In *Mid-Continent,* this court said at 47 Wis.2d 748–749:

"Since there was no evidence of vindictiveness, malice *nor wanton disregard* on the salesman's part the trial court did not err in refusing to submit punitive damage questions to the jury. [Emphasis supplied.]

" . . . .

"It should further be noted that the respondent correctly argues there is no evidence of ratification by the plaintiff-corporation of the acts of the salesman in representing the freezer to be automatically defrosting. In *Garcia v. Samson's, Inc.* (1960), 10 Wis.2d 515, 103 N.W.2d 565, this court reaffirmed a well-established line

*Continent,* explicitly held a showing of "wanton, wilful, or reckless disregard of the plaintiff's rights," a sufficient foundation for the award of punitive damages.

Subjecting the facts of this case to the standards for the award of punitive damages, we hold that the award of punitive damages was proper. The jury found that Nysse made a misrepresentation of fact as to the insulation and heating costs of the house he sold to the Jeffers, knowing it was untrue and with the intent to deceive and induce the Jeffers to purchase the house. The actual and potential damages of the plaintiffs were substantial. (In addition to the increased heating costs and costs of additional insulation, the record shows that parts of the Jeffers' home could not be heated above forty-five degrees and others above fifty-nine degrees Fahrenheit).

While his conduct may not have been "malicious" or "vindictive," we have no difficulty in finding his conduct to be in willful disregard of the Jeffers' rights.

In 1923, Professor John Wickhem, later a distinguished member of this court wrote:

"It would seem entirely appropriate to permit the award of exemplary damages in all cases where the tort was committed from improper motives, whether those motives involved hatred of the plaintiff or merely the self-interest of the defendant."[4]

Our earlier opinions hold that when the motive of self-interest rises to the level of "wanton, willful or reckless

of cases refusing punitive damages in tort against a corporate defendant without proof that the defendant authorized or ratified the alleged tortious act of its employee. There is no evidence in the record respecting the company's knowledge of the alleged representation that the freezer was an automatic defrosting unit."

[4] Wickhem, *The Rule of Exemplary Damages In Wisconsin,* 2 Wis. L. Rev. 129, 136 (1923).

■

disregard of the rights of others"[5] punitive damages may be awarded in a proper case. Punitive damages are awarded to punish wrongdoing. To hold that punitive damages are improper in this case would shield the defendants from any liability beyond the costs of compensating the Jeffers for their costs in putting the house in the condition it was represented to be in originally. But "putting the cookies back in the jar" when caught is not enough. If that result were reached, sellers could make any misrepresentation necessary to make a sale. If it was not discovered, or was discovered but not pursued, the seller would make a windfall gain. If the fraud were discovered and successfully proven, the seller would only be liable to make good on his representations. He would suffer no punishment nor would he be deterred from similar conduct in the future.

■

We hold that punitive damages may be awarded where a fraudulent representation is made and relied on to induce a contract in willful, wanton, or reckless disregard of the plaintiff's rights. We, therefore, affirm the award of punitive damages in this case.

■

Punitive damages are never available as a matter of right. Exacting controls sharply restrict their availability. In *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 301, 294 N.W.2d 437 (1980), this court said:

"The assessment of punitive damages 'lies entirely in the discretion of the jury, not in any right of the one wronged. Even though the evidence may sustain exemplary damages, still if the jury does not award them, it is not error.' *Malco v. Midwest Aluminum Sales,* 14 Wis.2d 57, 63, 109 N.W.2d 516 (1961). The jury's refusal to award punitive damages is not reviewable. The amount awarded can never be unreasonably low. *See*

---

[5] *Fahrenberg v. Tengel,* 96 Wis.2d at 221.

Ghiardi, *Punitive Damages In Wisconsin,* 60 Marq. L. Rev. 753, 765. . . .

"Punitive damages must be decided on a case-by-case basis. The circumstances of each case must be considered to determine whether the award under the particular circumstances of that case serves the purposes of punitive damages. *Fahrenberg v. Tengel,* 96 Wis.2d 211, 122–236, 291 N.W.2d 516 (1980). An award which is more than necessary to serve its purposes (punishment and deterrence) or which inflicts a penalty or burden on the defendant which is disproportionate to the wrongdoing is excessive and is contrary to public policy." *Id.,* 96 Wis.2d at 234."

Nysse also argues that there was insufficient evidence to sustain the jury's finding of fraud.

The standard of review of a jury verdict is whether there is any credible evidence to support it. *Meurer v. I.T.T. General Controls,* 90 Wis.2d 438, 450, 280 N.W.2d 156 (1979). Where the jury's verdict is approved by the trial court, this court has been particularly reluctant to upset it. *Upton v. Tatro,* 68 Wis.2d 562, 570, 229 N.W.2d 691 (1975). On review, the evidence will be considered in the light most favorable to the verdict. *May v. Skelley Oil Co.,* 83 Wis.2d 30, 35, 264 N.W.2d 574 (1978).

Applying these standards to the facts in this case we are satisfied with the conclusion reached by the court of appeals affirming the jury's finding of fraud.

*By the Court.*—The decision of the court of appeals is affirmed.