Roy CADEK, Plaintiff–Appellant,

v.

GREAT LAKES DRAGAWAY, INC., Defendant–Appellee.

No. 94–3266.

United States Court of Appeals, Seventh Circuit.

Argued March 27, 1995.

Decided June 29, 1995.

---

Bradley S. Block (argued), Foley & Lardner, Chicago, IL, for plaintiff-appellant.

Bruce L. Carmen (argued), D. Kendall Griffith, Kevin J. Burke, Steven R. Bonanno, Hinshaw & Culbertson, Chicago, IL, for defendant-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and WALTER, District Judge.*

CUMMINGS, Circuit Judge.

Great Lakes operates a drag strip in Union Grove, Wisconsin. On July 17, 1992, Roy Cadek, a citizen of Illinois, paid a fee and signed a release in order to run his funny car, "Risky Asset," on the track. It was not a good run. Cadek's funny car collided with his own van which was parked by the side of the track. The damage from the collision itself was minor, but fuel leaked and an ensuing fire engulfed the funny car, the van and Cadek. Cadek's fire protective suit saved him from substantial injury. His funny car and van were not so fortunate, suffering combined damage of over $45,000.

Great Lakes Dragaway had a fire truck parked by the track which Cadek had seen on prior visits. Unfortunately for Cadek, it was unmanned and its extinguishers were empty. Great Lakes' functional fire-extinguishing equipment consisted of a garden hose attached to an exterior spigot. Had the fire truck been operational, the fire could have been quickly extinguished and Cadek's damages greatly reduced.

On March 8, 1993, Cadek filed a five-count complaint against Great Lakes alleging breach of contract, negligent rescue, negli-

* The Honorable Donald E. Walter of the Western District of Louisiana is sitting by designation.

gent misrepresentation, strict misrepresentation, and fraud and seeking $45,000 in compensatory and $150,000 in punitive damages.

On May 24, 1993, Great Lakes moved for summary judgment based on the signed release. On February 4, 1994, the district court issued a memorandum and order granting Great Lakes summary judgment on Cadek's negligence count and denying the motion on Cadek's four other counts.

On April 13, 1994, Great Lakes moved to dismiss the remaining counts under Rules 12(b)(1) and 12(b)(6). On August 15, 1994, the district court dismissed the complaint for lack of subject matter jurisdiction, holding that Cadek was not entitled to punitive damages as a matter of law and thus could not meet the amount in controversy requirement for diversity jurisdiction. Cadek appeals this dismissal.

## Discussion

### 1. Misrepresentation of fact

 As an alternative basis for dismissal under Rule 12(b)(6), Great Lakes argues that Cadek failed to allege a misrepresentation of fact by Great Lakes—a necessary element for a claim of fraud. It is undisputed that under Wisconsin law, conduct can constitute a misrepresentation of fact. *Goerke v. Vojvodich*, 67 Wis.2d 102, 107, 226 N.W.2d 211 (1975). The dispute between the parties is over what Great Lakes' conduct—parking an inoperable fire truck by a drag strip—represented or misrepresented as the case may be.

Great Lakes argues that the presence of the fire truck and extinguishers at the race track "represents one fact and one fact alone: 'there is a fire truck and fire extinguisher on the premises,'" [Def.Br. 4]. That the truck is manned and the extinguishers are filled are, they argue, mere inferences and not representations, because the facts only represent the facts.

This is a very silly argument. Consider a person boarding a cruise ship who sees rows and rows of lifeboats. The lifeboats look functional but in fact, as the captain knows, they are pierced like Swiss cheese with thousands of microscopic holes left by seagoing termites. Great Lakes would say "no fraud," porous lifeboats represent only porous lifeboats. Or consider someone who silently passes a counterfeit bill. Obviously, the representation or misrepresentation resulting from given conduct or set of facts depends on the circumstances and reasonable expectations of the parties: did the person accepting the counterfeit bill think he was accepting legal tender or bartering for an interesting piece of paper? Thus the question in the present case is whether a reasonable person seeing a fire truck parked at a drag strip would believe that the truck was functional and there to fight fires or was a form of outdoor sculpture or home for wayward dalmatians.

Drag racing, which involves highly flammable fuels—including alcohol and nitro-methane—pumped in large volumes at high pressures, presents a tremendous risk of fire. The absurdity of operating a drag strip without an operable fire truck or equivalent fire-fighting capability is therefore so great that a person seeing a fire truck parked at a track would inevitably assume that it is operable and there to fight fires. In parking an inoperable fire truck at the side of the track, Great Lakes misrepresented its fire-fighting capability to both competitors and spectators—as certain a misrepresentation as the silent passing of the counterfeit bill. Cadek's fraud allegation therefore survives Great Lakes' challenge under Rule 12(b)(6).

### 2. Availability of punitive damages

The district court dismissed Cadek's complaint under Rule 12(b)(1) holding that he could not recover punitive damages as a matter of law and that his remaining claim for $45,000 in compensatory damages fell short of the $50,000 required for diversity jurisdiction. 28 U.S.C. § 1332(a).

 "Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount." *Bell v. Preferred Life Society*, 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943); *Sharp Electronics Corp. v. Copy Plus, Inc.*, 939 F.2d 513, 515 (7th Cir.1991). Where punitive

damages are required to satisfy the jurisdictional amount in a diversity case, a two-part inquiry is necessary. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear "beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Risse v. Woodard,* 491 F.2d 1170, 1173 (7th Cir.1974).

■■■ Applying this analysis to the present case, the answer to the first question is that under Wisconsin law, punitive damages may be awarded for fraudulent misrepresentation. See *Jeffers v. Nysse,* 98 Wis.2d 543, 297 N.W.2d 495, 499 (1980) (permitting punitive damages when seller of home misrepresented heating costs). Therefore, the district court had jurisdiction unless it could determine to a legal certainty that a verdict awarding Cadek $5000.01 (the amount necessary to exceed $50,000) in punitive damages "would be excessive and set aside for that reason." *Sharp,* 939 F.2d at 515 (quoting *Bell,* 320 U.S. at 243, 64 S.Ct. at 7) (quoting *Barry v. Edmunds,* 116 U.S. 550, 565, 6 S.Ct. 501, 509, 29 L.Ed. 729 (1886)). The district court erred in so determining.

In upholding a jury award of $5000 in punitive and $3800 in compensatory damages where the seller misrepresented the applicable building code to the purchaser of an apartment building, the Wisconsin Supreme Court held that punitive damages were proper "if the injured party shows a reckless indifference to or disregard of the rights of others on the part of the wrongdoer." *Lundin v. Shimanski,* 124 Wis.2d 175, 368 N.W.2d 676, 687 (1985). A jury could certainly find that Great Lakes' misrepresentation of their inadequate fire-fighting capabilities showed reckless disregard for the rights and safety of competitors and spectators.

Where safety is at issue, the Wisconsin Supreme Court has allowed punitive damage recoveries even in cases of non-intentional torts. *Wangen v. Ford Motor Company,* 97 Wis.2d 260, 294 N.W.2d 437 (1980) (court allowed punitive damage claim in products liability case where defendant knew of defects). In determining the size of an award

the jury can consider "potential damage that might have been done by such acts as well as the actual damage." *Jeffers,* 297 N.W.2d at 497. Though the property damage suffered by Cadek was not insubstantial, the potential for personal injury to Cadek or spectators was obviously far greater and could properly be considered by a jury in awarding punitive damages. Considering Wisconsin law and the allegations in Cadek's complaint, it cannot be said beyond a legal certainty that he could not recover over $5000.00 in punitive damages. His complaint was therefore improperly dismissed under Rule 12(b)(1).

### 3. Negligent rescue claim

■■■ On remand, if Cadek is able to back up his allegations, the district court should reconsider its grant of summary judgment against Cadek on his negligent rescue claim. The district court based its decision on the enforceability of the release Cadek signed in order to run on the track.

■■■ Under Wisconsin law, exculpatory contracts are disfavored and strictly construed against defendants. *Dobratz v. Thomson,* 161 Wis.2d 502, 468 N.W.2d 654, 661 (1991) (ski club's general exculpation contract held not to bar ski accident claim because contract did not describe particular activity and location of events covered). Misrepresentations in the context of an exculpatory contract render it void even when the plaintiff is unable to prove all the elements of fraud.

> Even though all the elements of misrepresentation or mistake cannot be proved in a case involving an exculpatory contract (and in this case more specifically, defendants assert that the plaintiff cannot prove she relied on their misrepresentation), relief should be granted from the exculpatory contract when the probability of unfairness exists.... [W]e conclude that it would be contrary to public policy to enforce an exculpatory contract when the bargaining process involves a mistake or deception which is relevant to a reasonable person's decision to execute a release allocating losses.

*Merten v. Nathan,* 108 Wis.2d 205, 321 N.W.2d 173, 178 (1982). In *Merten,* the release stated that it was required because defendant had no insurance for his horseback-riding operation when in fact he did have insurance. The court refused to enforce the exculpatory contract even though the plaintiff could not establish reliance on the misrepresentation.

As discussed above, Great Lakes misrepresented its fire-fighting capability. Whether the track has a manned fire truck or a garden hose to fight fires is relevant to a reasonable person's decision whether to run his car at the track and whether to sign a liability release to do so and is at least as material as the no insurance misrepresentation in *Merten.* Therefore, if Cadek produces evidence to support his allegations, the release should be held unenforceable and not bar his negligence claim.

### Conclusion

The dismissal of Cadek's claims for lack of subject matter jurisdiction is reversed. The case is remanded to the district court for further proceedings consistent with this opinion.

FLAUM, Circuit Judge, concurring in the judgment.

I too believe that the district court improperly dismissed Cadek's claims for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1). Cadek pled sufficient facts to allege that Great Lakes had engaged in fraud by its misrepresentation, and that he was therefore entitled to punitive damages, thus enabling him to meet the amount in controversy requirement.

First, Cadek sufficiently pled fraud by alleging a misrepresentation of fact by Great Lakes. Cadek expressly alleged that: (1) Great Lakes operated an automobile race track; (2) fire is a common hazard at race tracks; (3) Great Lakes had a fire truck and fire extinguishers on the race track on the date of the accident; and (4) Great Lakes' fire fighting capabilities did not include the fire truck or the fire extinguishers, but only included an exterior spigot and garden hose. Although Great Lakes did not make any oral representations to Cadek, reviewing the allegations in the light most favorable to Cadek, *Gould v. Artisoft, Inc.,* 1 F.3d 544, 546 (7th Cir.1993), Great Lakes' conduct of placing the equipment on location, and keeping it there after it became dysfunctional, affirmatively misrepresented that the fire engine was manned and the extinguishers operational. *See Lundin v. Shimanski,* 124 Wis.2d 175, 368 N.W.2d 676, 681 n. 5 (1985) ("a misrepresentation can be conveyed in one's actions as well as by spoken words"); *Goerke v. Vojvodich,* 67 Wis.2d 102, 226 N.W.2d 211, 214 (1975) (recognizing that conduct can serve as a misrepresentation of fact). The fire truck's presence at the race track could lead a reasonable person to believe that the truck and extinguishers were functional and capable of fighting fires.

I also agree that Great Lakes' alleged fraud, which endangered Cadek's physical safety, potentially could warrant punitive damages, and thereby allow him to meet the jurisdictional amount in controversy requirement, *see* 28 U.S.C. § 1332(a), and survive dismissal under 12(b)(1). We look to Wisconsin law in determining whether punitive damages are recoverable damages for the alleged tort. *See Sharp Elecs. Corp. v. Copy Plus, Inc.,* 939 F.2d 513, 515 (7th Cir.1991). Under this state law, punitive damages are available for fraud. *Jeffers v. Nysse,* 98 Wis.2d 543, 297 N.W.2d 495, 499 (1980); *see also Sharp,* 939 F.2d at 515. While alleged tortious conduct must ordinarily rise to a level of wilful or wanton disregard for rights or interests to recover punitive damages, *see Loehrke v. Wanta Builders, Inc.,* 151 Wis.2d 695, 445 N.W.2d 717, 721 (1989), the level of misconduct is lower when a defendant's actions endanger the life and safety of others and the defendant has knowledge of the potentially dangerous situation. *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 294 N.W.2d 437, 462 (1980); *Walter v. Cessna Aircraft,* 121 Wis.2d 221, 358 N.W.2d 816, 823 (Ct.App. 1984). In the instant case, Cadek alleged sufficient facts that Great Lakes engaged in:

> conduct the defendant knows or should have reason to know, not only that his conduct creates an unreasonable risk of harm, but also that there is a strong prob-

ability, although not a substantial certainty, that the harm will result but, nevertheless, he proceeds with this conduct in reckless or conscious disregard of the consequences ...

*Lundin,* 368 N.W.2d at 687, n. 14 (quoting J. GHIARDI AND J. KIRCHNER, PUNITIVE DAMAGES LAW AND PRACTICE, ch. 5, § 5.01 at 8–9 (1984)). Cadek sufficiently pled that Great Lakes should have recognized the risks that accompany the absence of adequate fire fighting capabilities on an active race track and, in light of the frequency of fires on automobile race tracks, proceeded with its conduct and disregarded the potential harms, which ultimately became a reality. Thus, Cadek adequately alleged facts and circumstances showing a wilful disregard for his rights, making it clear that he "could recover punitive damages under the circumstances alleged in the complaint," *Sharp,* 939 F.2d at 515, and meet the jurisdictional requirements.

WALTER, District Judge, dissents.

Plaintiff alleged only $45,000 in compensatory damages. If he failed to plead facts sufficient to show a legal basis for punitive damages, the dismissal for lack of jurisdiction stands. Cadek argues that he pled sufficient facts to show that defendant had engaged in fraud by misrepresentation, thus entitling him to punitive damages.

Wisconsin law recognizes fraud by misrepresentation as a ground for punitive damages. *Jeffers v. Nysse,* 98 Wis.2d 543, 297 N.W.2d 495, 499 (1980). Thus the initial question is whether Cadek plead facts sufficient to demonstrate fraud by misrepresentation. Given the standard for review of a motion to dismiss, our question becomes whether it is clear beyond a legal certainty "that plaintiff would under no circumstances be entitled to recover the jurisdictional amount". *Risse v. Woodard,* 491 F.2d 1170, 1173 (7th Cir.1974).

The majority opinion views the pleadings as sufficient. The opinion argues that race tracks involve a high risk of fire and that any reasonable person viewing a fire truck stationed at a race track would assume it was operational. This may be true, but it does not rise to the level of fraudulent misrepresentation as defined by Wisconsin law.

Though no employee of the defendant voiced any representation to plaintiff regarding the fire truck, conduct alone may suffice as a representation. *Goerke v. Vojvodich,* 67 Wis.2d 102, 226 N.W.2d 211, 213 (1975). In *Goerke,* the Wisconsin Supreme Court stated three elements necessary for fraudulent misrepresentation: (1) a false representation, (2) made with the intent to defraud and for the purpose of inducing another to act upon it, and (3) that the other person must rely on it and be induced to act, to his injury or damage. *Id.* Even if this Court accepts plaintiff's argument that parking a fire truck on a raceway would lead anyone to believe the truck operated properly, that proves only the first element. It does not demonstrate any malice or intentional inducement on the part of the defendant. Nor does it demonstrate that Cadek so relied on the supposedly functional truck that it induced him to race there.

Other Wisconsin cases which found fraudulent misrepresentation involved much more devious behavior. In *Lundin v. Shimanski,* a prospective home buyer sought income producing property. 124 Wis.2d 175, 368 N.W.2d 676 (1985). Cognizant of this fact, the seller misrepresented the applicable zoning codes to induce the buyer to purchase the property. *Id.* In *Jeffers v. Nysse,* a prospective home buyer asked the seller what the heating expense would be. 98 Wis.2d 543, 297 N.W.2d 495 (1980). The seller misrepresented those costs in order to induce the buyer to purchase the home. Though both of these cases resulted in punitive damages, they involved much more egregious conduct. The raceway's conduct simply did not rise to this level, nor has plaintiff produced any evidence that he relied on defendant's conduct.

Plaintiff has not plead facts sufficient to entitle him to punitive damages via fraudulent misrepresentation. Thus plaintiff is not entitled to punitive damages, and cannot meet the amount in controversy requirement. The District Court's dismissal should stand, however, because the trial court lacked juris-

diction, its grant of summary judgment on the negligence claim should be reversed.

For these reasons, I respectfully dissent.