[Civ. No. 1475.  Second Appellate District.—February 26, 1914.]

## WILBERT MORGRAGE, Appellant, v. THE NATIONAL BANK OF CALIFORNIA (a Corporation), Respondent.

Corporations—Blank Indorsement of Stock—Pledge by Holder for Improper Purpose—Rights of Pledgee.—Where certificates of stock are indorsed in blank to a broker to sell, but he, acting wrongfully, attaches them to his draft drawn on a third person and obtains credit thereon at a bank where he is a depositor, the

bank may, upon the dishonor of the draft, reimburse itself by selling the stock, if it had no notice of the ownership other than that presumed from the blank indorsement of the stock.

ID.—SALE OF STOCK BY PLEDGEE BANK—ACTION FOR CONVERSION— PLEADING AND PROOF.—In this action against the bank for alleged conversion on account of such sale, want of notice of any claim or interest in the stock by any other person than the pledgor is sufficiently set up in an answer alleging the agreement and transaction which included the giving of the credit, and further averring that in the transaction the defendant understood and believed the pledgor was the absolute owner of the stock; and the facts thus alleged are substantiated by the evidence.

ID.—OBLIGATION OF DEPOSITOR TO BANK—EXTINCTION BY DEPOSIT— RIGHT OF SETOFF.—The fact that on the day following the date upon which the draft and the stock were deposited and credit given, an additional sum of money was deposited with the bank by the pledgor, which would have been sufficient, if so applied, to discharge the amount of the draft credit, did not operate to extinguish the obligation of the pledgor thereon. The bank had the right at any time to offset any matured indebtedness owing by him to it against his credit.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. O. Moncur, Judge presiding.

The facts are stated in the opinion of the court.

W. N. Goodwin, and Hunsaker & Britt, for Appellant.

Oscar A. Trippet, and Trippet, Chapman & Biby, for Respondent.

JAMES, J.—This action was brought to recover damages for the alleged conversion of fifteen thousand shares of the capital stock of a certain oil company. The appeal is from a judgment entered in favor of the defendant, and is presented on the judgment-roll and a bill of exceptions.

In August, 1910, one C. B. Miner was engaged in business as a stock broker in the city of Los Angeles and a banking account was carried with him on the books of defendant. Miner had, during the time that he carried the account with defendant, been a depositor of a large amount of money. Between the first and the eleventh days of August he had deposited with defendant bank the sum of $156,919.02. On the

morning of August 12, 1910, his cash credit balance was $5,651.84. At noon on the same day checks had been received by the bank, drawn against the account, aggregating the sum of $21,241, which checks were held to await a deposit to cover. At about two o'clock on that day Miner offered for credit drafts drawn by him, accompanied by certificates of stocks, and some checks drawn to his order. There were four of these items, aggregating $15,739.05, which amount was passed to his credit. At the end of that day the credit had been exhausted by the payment of checks issued by the depositor. As a matter of fact, of the $15,739.05 credit given on August 12th the amount of $12,420 was made up of items which were not *bona fide*, but fraudulent, which fact was not discovered until later. On August 13th, in the forenoon, a new deposit credit was given Miner for items presented on that day, amounting to $20,651.25. That was the last transaction had with the bank by Miner, who immediately absconded and was not thereafter heard from. Among the items included in the credit of $15,739.05 given on August 12th was one for the sum of $4,837.50, which was represented by draft drawn by Miner on one Gartland at San Francisco. Attached to this draft were the certificates representing the stock which it is alleged by appellant was improperly converted to the use of defendant. In receiving the draft for collection, according to the customary mode of doing business with Miner, the bank did so with the agreement that if the draft was not paid when presented, the amount thereof should be charged back to Miner in his account, and if he failed or refused to reimburse the bank the stock of the oil company should then be resorted to by the bank to secure such reimbursement. A transfer of the certificates of stock had been indorsed in blank by the persons to whom the stock had been issued, and they were presented in that form by Miner to the bank when he deposited the draft. It is admitted that the bank, if it had no notice of any other ownership than that presumed from the blank indorsement, could rightfully assume that Miner was the owner thereof, and if it parted with value relying upon that presumption, the title that it might secure in a proceeding taken for the purpose of subjecting the stock to the satisfaction of the debt arising upon the nonpayment of the draft, would be a good title, even though Miner was not the real owner, but, as the fact was, had

received the stock for the purpose of making a sale of it in the course of his brokerage business. The owners of the stock had in fact indorsed the transfer thereof in blank and had given Miner authority to sell and deliver the shares represented by the certificates. As a matter of fact, however, Miner had made no sale of the stock to Gartland, the person upon whom he drew his draft, and in view of subsequent events, it appeared clear that his intention when he presented the draft and stock was to improperly secure a credit to be made in his favor and upon which he might obtain money. As soon as the bank secured an intimation that Miner had absconded, which was on August 13th, it proceeded to apply the credit balance of Miner's account to cover items owing to it, arising in part upon credits given which were fraudulently obtained on drafts accompanying purported certificates of stock which were found to be forgeries, and including one check drawn in Miner's favor for the sum of five thousand dollars, the signature of the drawer of which was found to be a forgery. The amount of five thousand eight hundred dollars was credited upon an indebtedness evidenced by a promissory note drawn in favor of the bank by Miner, upon which there was then due the sum of twelve thousand eight hundred dollars; and when these amounts were charged against the credit, there remained only the sum of one thousand dollars, which was paid out on a check issued by Miner. After these credits had been applied, Miner was still indebted to defendant. Within a few days thereafter a notice was received that the $4,837.50 draft drawn upon Gartland had been dishonored, and the bank, in order to reimburse itself for the credit on that account as given to and used by Miner, took proceedings to sell and did offer for sale and bid in, the stock of the oil company which had accompanied this draft. Meanwhile appellant herein secured by assignment whatever interest, if any, was retained by the persons who had indorsed the stock to Miner, and this action was brought after refusal made by the defendant to deliver up the stock upon appellant's demand therefor.

The first contention made by appellant is that it was essential for the defendant to allege and prove that at the time it received the stock in question and at the time it paid out the money credited to Miner on account thereof it had no notice of any claim of interest possessed by any other person in the

shares of stock. The defendant in that regard did allege in
its answer the following facts which were substantiated by the
evidence and found by the court to be true: "And that in the
said transaction involved in this controversy, when the said
Miner presented the same to the defendant with the draft at-
tached as aforesaid, the said Miner did request of the assistant
cashier of defendant who was one of the officers authorized
to act for the bank in such transactions, that a credit be given
him in his deposit by way of advancement to him for the
amount of the said draft, and that the said stock should stand
as security for such advancement as hereinbefore set forth,
and defendant did, pursuant to said request, investigate the
value of the said stock, and being of the opinion that its value
was sufficient to justify said advancement, did, upon the faith
of said security, and upon the transfer and deposit of the
same with the said bank, as aforesaid, for the purpose of
securing the said bank, defendant did credit the said Miner
with the amount aforesaid, and the same was checked out and
received by said Miner as aforesaid, and in the said transac-
tion this defendant understood and believed that the said
Miner was the absolute owner of the said stock, and defendant
had no knowledge, information or belief, that any other person
than the said Miner had any interest therein, or in any part
thereof, and said credit was given upon the faith of said be-
lief." By this allegation the agreement and transaction,
which included the giving of the credit and the using of the
same by the payment of checks drawn against it, were first
set out, and the allegation following, that "in the said transac-
tion this defendant understood and believed that said Miner
was the absolute owner of the said stock," seems sufficient as
covering all of the times material to the matter involved in
the question made. Because, on the day following the date
upon which the draft and the oil stock were deposited and
credit given, an additional sum of money was deposited, which
would have been sufficient, if so applied, to discharge the
amount of the draft credit, that condition of the account did
not operate to extinguish the obligation of Miner thereon.
The defendant had the right at any time to offset any matured
indebtedness owing by Miner to it against his credit (*Marble
Co.* v. *Merchants Nat. Bank,* 15 Cal. App. 347, [115 Pac. 59]),
and it was in the exercise of this right that it utilized the

major portion of the credit obtained by the deposit of August 13th. At that time it had not been ascertained that the Gartland draft would be dishonored, although even had that fact been known the rights of defendant as to the application of the credit would not have been changed. It was the agreement that the stock accompanying the draft might be utilized for the purpose of reimbursing the bank on account of that particular credit. The bank to that extent had security to cover the amount so credited, and unquestionably it had the right to look to that security in securing satisfaction of the debt. Both questions discussed must, therefore, be resolved against the contention of appellant, and there are none others which seem to require attention. There was sufficient evidence to sustain all of the findings made by the trial court.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.