MATZ, Respondent, vs. FARMERS & CITIZENS BANK OF SAUK CITY, Appellant.

*June 3—June 24, 1935.*

614

For the appellant there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman M. Quale*.

For the respondent there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill*.

NELSON, J.   In 1930, the plaintiff owned a $10,000 promissory note secured by a real-estate mortgage.   Her nephew, Raymond Lueth, was a member of the firm of Fisher & Lueth, a copartnership, engaged at Sauk City in a mercantile business.   Prior to the late spring of 1930, Fisher & Lueth profitably operated a small variety store.   In January, 1930, one Rischmueller, another local merchant became insolvent. He was heavily indebted to the defendant bank.   The bank took over the liquidation of his business, and its cashier entered into negotiations with Fisher & Lueth looking to the sale of the Rischmueller stock of merchandise to them. Fisher & Lueth told the cashier that they had no money with which to swing the deal, whereupon the cashier said "that is where we come in."   Thereafter Fisher & Lueth purchased the stock, put on a sale which cleaned up all or most of Rischmueller's indebtedness to the bank, but which resulted in depleting their stock of merchandise.   It became necessary to replenish it.   The bank, apparently in compliance with its agreement with Fisher & Lueth, loaned them $1,500 on June 23, 1930, without security.   Again on July 2d the bank loaned them the further sum of $2,500 without security. At the time they took over the Rischmueller stock they owed the bank $200 which, on July 2d, had not been paid.   So, at that time, their indebtedness to the bank amounted to $4,200, all unsecured.   On or about August 1st, they desired to borrow $2,500 more.   According to their testimony the cashier told them that the bank would not loan them any more money without security.   Lueth then interviewed the plaintiff, his aunt, and sought to borrow $2,500 from her.   She had no money to loan, but consented to help out the firm by permitting her mortgage to be pledged to the bank so that they might obtain the required loan.   She instructed her husband to get the note and mortgage from her safety-deposit box in another bank and to deliver it to the defendant.

This he did. What was said by her husband at the time he delivered the mortgage to the bank does not appear. He died prior to the time of the trial. Only the note and mortgage were delivered to the bank. Fisher & Lueth were informed by the cashier that it would be necessary to obtain from the plaintiff an assignment of the mortgage. A few days thereafter the cashier, having drawn an assignment of the mortgage to the bank, turned it over to the assistant cashier with instructions to get the plaintiff to execute it. Accompanied by Lueth, the assistant cashier went to the plaintiff's house where she executed the assignment. The assignment was a straight assignment to the bank for a consideration of $10,000. There was nothing on its face to indicate that it was in any respect conditional, or that it was for the purpose of securing an indebtedness of Fisher & Lueth. Testimony was adduced by the plaintiff tending to show that $2,500 was mentioned in the presence of the assistant cashier at the time plaintiff executed the assignment. The assistant cashier, however, testified that he did not recall that any sum was mentioned by any one present at that time. The assignment was thereafter brought to the bank by the assistant cashier and turned over to the cashier. On August 11th, when the note and mortgage were delivered to the bank, Fisher, on behalf of the firm, signed a note for $6,700 which included the $2,500 loan and all of the other indebtedness of the firm. Shortly after the assignment was returned to the bank on August 14th, Fisher, on behalf of the firm, signed a collateral note for $6,700 in renewal of the other note just mentioned, and unqualifiedly pledged the plaintiff's mortgage to secure it. That note was renewed four times, the final renewal being on August 14, 1932. Each time the note was renewed the interest thereon was duly paid. Later on in 1932 Fisher & Lueth made an assignment for the benefit of their creditors. The plaintiff never agreed that her

mortgage should secure all of Fisher & Lueth's indebtedness. She was never informed that Fisher & Lueth had so pledged it. After finding the facts substantially as stated, the court concluded that the plaintiff was entitled to a judgment of rescission and to a reassignment of the mortgage, upon her paying to the bank the sum of $2,500, together with interest thereon at the rate of six per cent per annum from August 14, 1932.

The principal contentions of the defendant are that the court erred, (1) in determining that the bank was not entitled to hold the note and the mortgage as security for the payment of all of the indebtedness of Fisher & Lueth; (2) in determining that the plaintiff was entitled to a rescission of the assignment and to a reassignment of the mortgage upon her paying to the bank the sum of $2,500 and certain interest; (3) in making certain findings of fact; (4) in failing to make certain findings of fact; and (5) in refusing to admit certain evidence offered by the defendant. In our view, all of the defendant's contentions are without merit. The facts found by the court as hereinbefore summarized are supported by the evidence. No useful purpose would be served by reciting the evidence in detail. There is no doubt that the plaintiff intended to collateralize only a $2,500 loan. That was the amount that her nephew desired to borrow from her. That was the amount that she was told that Fisher & Lueth needed. No one told her that the bank would not make the $2,500 loan to Fisher & Lueth unless all of their indebtedness to the bank was collateralized. No one told her in advance of her assigning the mortgage to the bank that it would be so used. No one told her thereafter that it had been so used. Fortunately for her she did not deliver the mortgage, together with an assignment thereof, to Fisher & Lueth or to either of them so as to clothe them with the apparent ownership of the mortgage. On the con-

trary, she had her husband obtain the mortgage from her safety-deposit box and deliver it direct to the bank unaccompanied by an assignment. The bank knew that she, not Fisher & Lueth, or either of them, was the owner of the mortgage. The bank procured an assignment of the mortgage, not to Fisher & Lueth, but to it. The assignment, although unconditional in form and for a full consideration, was concededly executed and delivered only for the purpose of securing some indebtedness of Fisher & Lueth. There is no dispute as to this. However, the bank failed and neglected to enter into any contract or agreement with the plaintiff, or to have any understanding at all with her as to what amount of the Fisher & Lueth indebtedness she was securing, but merely relied upon the assignment of the mortgage and the pledge agreement contained in the note signed by Fisher & Lueth. The bank knew that Fisher & Lueth did not own the mortgage or have any interest in it, and that they had never had the possession of it.

The fact that the bank failed to enter into any contract, agreement, or understanding with the plaintiff is fatal to its contentions.

"In order to constitute a pledge of personal property there must be a contract whereby the property is to be held as security." 49 C. J. p. 904, § 24.

"As to what debts or liabilities are secured by a pledge is controlled by the intention of the parties, as determined from the whole transaction between them; and where the contract, prepared by the pledgee, is not clear as to whether the collateral pledged shall secure a particular indebtedness, it must be construed in favor of the pledgor." 49 C. J. p. 936, § 77.

There is no testimony in the record which tends to show that the plaintiff either agreed or intended that her mortgage should secure all of Fisher & Lueth's indebtedness to the bank, or which gives rise to an estoppel.

This case is not ruled by the principle stated in such cases as *Scollans v. Rollins,* 179 Mass. 346, 60 N. E. 983; *Morgrage v. National Bank of California,* 24 Cal. App. 103, 140 Pac. 300; *Benjamin v. Rogers,* 126 N. Y. 60, 26 N. E. 970; *Naef v. Potter,* 226 Ill. 628, 80 N. E. 1084, where the respective owners of (1) a certificate of indebtednes, (2) certificates of stock, (3) a note and a mortgage, and other similar property had assigned and intrusted it to another who was thereby clothed with the apparent ownership of it, and in a position to deal with it as his own, to sell it or to pledge it to one who had no notice of the true owner, and who relied upon the right of the apparent owner to deal with it.

Nor are the facts of this case ruled by the principle that where one of two innocent persons must suffer by reason of the wrongful act of a third person, the one who made it possible for the third person to commit the act should bear the loss. *Shepard v. Pabst,* 149 Wis. 35, 135 N. W. 158; *Citizens' Bank v. Mutual Trust & Deposit Co.* 206 Ky. 86, 266 S. W. 875, 40 A. L. R. 1001; *National Safe Deposit Saving & Trust Co. v. Hibbs,* 229 U. S. 391, 33 Sup. Ct. 818. Had the plaintiff assigned the mortgage to Fisher & Lueth, or either of them, and delivered the note and mortgage and assignment to them, or either of them, and had they, or either of them, thereafter pledged the mortgage to secure their indebtedness, we should have an entirely different factual situation to consider, to which the principle established by the cases cited would be applicable.

The plaintiff does not assert that the bank is not entitled to claim the benefit of her mortgage as security to the extent of $2,500 and interest on that amount from August 14, 1932, so the effectiveness of her pledge to that extent is not questioned.

Although the plaintiff's proof did not warrant the court in decreeing a rescission of the assignment as against the

bank, since no fraud, misrepresentation, or concealment on the part of the bank was shown, and although the court in its order for judgment did use the word "rescission," the order for judgment and the judgment only determined that the plaintiff was entitled to redeem her pledge by paying to the bank the sum of $2,500 and interest.

The testimony which the defendant contends was erroneously excluded related, (1) to the good faith of the cashier of the bank in believing that Fisher & Lueth had the right to pledge the plaintiff's mortgage to secure the full amount of their indebtedness; (2) to the failure of the plaintiff to heed the advice of her husband who, according to the evidence offered, advised her not to pledge her mortgage at all. In our opinion, evidence of the good faith of the cashier in believing that Fisher & Lueth had the right to use the mortgage to secure all of their indebtedness was, under the facts of this case, immaterial. It is likewise our opinion that the evidence offered tending to show that the plaintiff was negligent in not heeding the advice of her husband, or in unconditionally assigning the mortgage to the bank, was also immaterial in this action which, properly viewed, was not one to rescind the assignment, but was one to redeem her pledge upon the payment to the bank of such an amount as would be equitable under all of the circumstances.

*By the Court.*—Judgment affirmed.