69 B.R. 436 (1987)
In the Matter of Sheldon ZIMMERMAN, Debtor.
Keith E. BROADNAX, Trustee, Plaintiff,
v.
PRUDENTIAL-BACHE SECURITIES, INC., Defendant.
Bankruptcy No. 84-02603, Adv. No. 84-0384.
United States Bankruptcy Court, E.D. Wisconsin.
January 22, 1987.
*437 Jack U. Shlimovitz, Ludwig & Shlimovitz, for plaintiff.
Elizabeth A. Orelup, William H. Harbeck, Quarles & Brady, for defendant.

MEMORANDUM DECISION
C.N. CLEVERT, Chief Judge.
The debtor, Sheldon Zimmerman, is a former account executive for defendant, Prudential-Bache Securities, Inc. (Bache). While at Bache, he contributed to an employee savings fund (Bayco account funds) administered by the company's benefits department and maintained by the Irving Trust Company. On January 3, 1984, Zimmerman left Bache to join another securities firm. At that time, he requested and was entitled to receive vested benefits of over $20,000, payable on March 31, 1984, the end of the calendar quarter following termination of his employment.
The day after leaving his position at Bache, Zimmerman agreed to repay Bache for personal trading losses amounting to $90,660. He, therefore, executed a promissory note requiring payment in full with interest at 14% per annum, an initial payment of $40,000 and monthly payments thereafter in the sum of $1,688.67. But by mid-January, 1984, Zimmerman realized he could not repay the note as agreed. Consequently, on January 19th, his attorney proposed to Bache's attorney that the note be modified. His attorney wrote:
As to the $40,000 due on or before February 1, 1984, Mr. Zimmerman proposes to turnover the balance in his Bayco savings account, approximately $20,000, as soon as it matures. His first monthly installment will commence with May 1, 1984, with payment of $844.33. Payments of this amount (1/2 of that provided in the note) will continue for another two months at which time the monthly payments would increase to the amount set forth in the note. At the end of the term, September 1, 1986, Mr. Zimmerman will discharge the full balance remaining due.
Bache's attorney accepted the proposal and, with Zimmerman's authorization, directed the company's benefits department to deliver to him a check for the balance payable to Zimmerman from his Bayco account on March 31st. However, after the check was delivered to Bache's attorney, Zimmerman refused to endorse it and the check remained uncashed when Zimmerman filed his petition on June 27, 1984.
Keith Broadnax, Zimmerman's Chapter 7 bankruptcy trustee, subsequently initiated this adversary proceeding seeking turnover of the Bayco account funds pursuant to 11 U.S.C. §§ 363 and 542. Bache counterclaimed seeking a declaratory judgment that as a result of debtor's pledge in its favor the estate has no interest in the funds; Bache is entitled to possession of the funds to reduce Zimmerman's obligation to Bache; Bache is entitled to an order, pursuant to 11 U.S.C. § 554(b), directing the trustee to abandon any interest he may claim in the funds; and, Bache is entitled to an order directing the trustee to take reasonable and necessary steps to enable it to take possession of the Bayco account. In the alternative, Bache asks for relief from the automatic stay in order to *438 enable it to take possession of the Bayco account.
ANALYSIS
At common law a pledge is defined as a security interest in a chattel or in an intangible represented by an indispensable instrument, the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty.[1]Restatement of Security § 1 (1941).
The elements of a pledge include a contract between pledgor and pledgee whereby the property is to be held as security. Matz v. Farmers and Citizens Bank, 218 Wis. 613, 618, 261 N.W. 755, 757 (1935). In order to perfect a pledge and create a lien it is essential that the pledgee have possession of the pledged property. Geilfuss v. Corrigan, 95 Wis. 651, 665, 70 N.W. 306, 310 (1897); Restatement of Security, supra, at Comment a. However, a pledge of property that is in the possession of a third person may be created by the pledgor's assent coupled with notification to the third person pledge holder that the property has been pledged to the pledgee. Restatement of Security, supra at § 8.
In this case, the purported pledged property consists of funds in an employee savings account maintained at the Irving Trust Company. "When a person deposits money with a bank in a general account such as a savings account, a creditor/debtor relationship is established. The bank becomes liable on the terms of the expressed or implied contract of deposit." (Citations omitted) Ma v. Community Bank, 494 F.Supp. 252, 256 (E.D.Wis.1980) aff'd in part and rev'd in part, 686 F.2d 459 (7th Cir.1982), cert. denied 459 U.S. 962, 103 S.Ct. 287, 74 L.Ed.2d 273 (1982) reh'g denied 459 U.S. 1081, 103 S.Ct. 504, 74 L.Ed.2d 642 (1982). Hence, "[m]oney deposited in a general account at a bank does not remain the property of the depositor. Upon deposit of funds at a bank, the money deposited becomes the property of the depositary bank; the property of the depositor is the indebtedness of the bank to it, a mere chose in action." Miller v. Wells Fargo Bank International Corp., 540 F.2d 548, 560 (2d Cir.1976); See also, Walton v. Piqua State Bank, 204 Kan. 741, 466 P.2d 316, 329 (1970). As such, a deposit account is an intangible property interest which may be pledged where possession is accomplished through the device of an indispensable instrument. Walton, supra, 466 P.2d at 327; Restatement, supra, at § 1 Comment e. This document then represents the intangible property right "to the extent that it stands in the place of, or embodies, or reifies, the intangible [so that] a pledge of the document amounts to a pledge of the right." Annotation, Pledge by Transfer of Instrument, 53 A.L.R.2d 1397, 1398 (1957).
Court's have refined the definition of an indispensable instrument to require that it give to the holder thereof exclusive control and irrevocable authority over the property interest pledged. Thus, it was held in the Miller case that a telex test key number was not an indispensable instrument even though it gave the purported pledgee bank sole physical control over the deposit or withdrawal of funds in a time deposit account. The court found that the bank failed to establish that the telex key number gave it irrevocable authority over the account or that the depositor could not have gained access to the account. Miller, 540 F.2d at 563. Similarly, in Walton v. Piqua State Bank, supra, the court held that a bank could not claim a perfected pledge interest in its depositor's savings account where the depositor neither delivered possession of her passbook nor executed a formal written assignment of the account. The court suggested that mere delivery of an indispensable instrument without an accompanying transfer of title *439 may be insufficient to perfect a pledge of incorporeal property. In so doing it stated:
[m]any cases recognize that incorporeal property, or any legal or equitable interest whatever in personal property, may be pledged provided it is, by actual delivery of documentary evidence of title or written transfer, placed into the hands or within the power of the pledgee so as to be made available to him for the satisfaction of the debt. 466 P.2d at 328.
In Duncan Box and Lumber Co. v. Applied Energies, Inc., 165 W.Va. 473, 270 S.E.2d 140 (1980), the court upheld a bank's claim as pledgee of funds in its depositor's reserve account. The court found that a written agreement between the bank and the depositor creating the account was intended to give the bank collateral security; that the agreement gave the bank exclusive possession and control over the account; and that even in the absence of a traditional indispensable instrument, the agreement between the parties unmistakably created a pledge. Id. 270 S.E.2d at 145.
Under the foregoing principles, it is clear to this court that the stipulated facts fail to establish that Bache, or Irving Trust, as a possible third party pledge holder, ever had exclusive possession and control over Zimmerman's Bayco savings account. The stipulated facts indicate that on January 3, 1984, Zimmerman requested that the Bayco account funds be paid to him when due and that the Irving Trust Company prepared a check payable to Zimmerman which was then delivered to Bache at Bache's direction. The facts, therefore, indicate that Zimmerman never relinquished his interest in the funds and that Bache and Irving Trust recognized that to be the case. As a consequence, there is no reason to believe that Zimmerman did not have the right to stop payment on the check in question, have Irving Trust issue a new check, or seek payment of the Bayco account balance in cash.
It would seem that at most, Bache may have an interest in the check itself rather than the funds the check orders Irving Trust to pay. As explained in the Restatement, "[w]here the instrument is not an indispensable one, the delivery may be evidence of an intent to make an assignment of the intangible, but the bailment alone creates an interest in the thing delivered rather than the intangible represented by it." Restatement of Security, § 2, Comment on subsection 3.
In view of the above, the court finds that Zimmerman's Bayco account funds were not pledged in Bache's favor; that the funds total approximately $20,000; and, that the value of the funds to Zimmerman's estate preclude this court from issuing an order of abandonment pursuant to § 554(b) or granting Bache relief from the automatic stay pursuant to § 362(d)(2).
As for the trustee's action for turnover, it is clear that 11 U.S.C. § 542(a) requires an entity, such as Bache, to deliver and account for property that the trustee may use, sell or lease under § 363 of the Bankruptcy Code. Because the Irving Trust Company check in question became property of the estate under § 541 of the Code and because the check is property that may be "used" by the trustee, the trustee is entitled to judgment on his complaint.
NOTES
[1] The pledge of a savings account falls outside the scope of the Uniform Commercial Code and is governed by common law. See, §§ 409.104(13), 409.105(1)(e), Wis.Stats.; Duncan Box and Lumber Co. v. Applied Energies, Inc., 165 W.Va. 473, 270 S.E.2d 140, 143 (1980); Walton v. Piqua State Bank, 204 Kan. 741, 466 P.2d 316, 327 (1970).